Mark L. Javitch (California SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705

*Attorney for Plaintiff*
And those similarly situated.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| **ROSE SALAIZ**, individually, and on behalf of all others similarly situated, | Civil Action No.: 3:25-cv-00125 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| **STREAMLINE PROTECTION GROUP, LLC**, a Florida Limited Liability Company, and **INTEGRITY ADMIN GROUP, INC.**, a Delaware Corporation, | |
| Defendants. | |

Plaintiff ROSE SALAIZ, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants STREAMLINE PROTECTION GROUP, LLC (hereinafter "SPG" or "Defendant") and INTEGRITY ADMIN GROUP, INC. (hereinafter "Integrity") to stop their illegal practice of sending unsolicited telemarketing calls to the telephones of consumers whose phone numbers were registered on the Federal Do Not Call Registry, and to obtain redress for all persons injured by their conduct. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse,* Plaintiff brings this

1

action on behalf of a proposed nationwide class of other people who received illegal telemarketing calls from and/or on behalf of Defendants SPG and Integrity. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorney.

## NATURE OF THE ACTION

1. As a part of their marketing, Defendants SPG and Integrity placed thousands of unsolicited calls to consumers whose phone numbers were registered on the Federal Do Not Call Registry.

2. Defendant SPG and Defendant Integrity did not obtain consent prior to placing these unsolicited calls, and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3. Congress enacted the TCPA in 1991 in response to "a torrent of vociferous consumer complaints about intrusive robocalls."

4. The TCPA instructed the Federal Communications Commission to "prescribe regulations to implement methods and procedures for protecting the privacy rights [of consumers] . . . in an efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers." 47 U.S.C. § 227(c)(2).

5. The TCPA explicitly authorized the FCC to establish a "single national database" of telephone numbers belonging to those who object to receiving telephone solicitations. *Id*. § 227(c)(3).

6. By placing these unsolicited calls to people who have registered their phone numbers on the national do-not call database, Defendants SPG and Integrity violated the privacy and statutory rights of Plaintiff and the Class.

7. Plaintiff therefore seeks an injunction requiring Defendants to stop placing calls to people on the Do Not Call Registry, as well as an award of actual and statutory fines to the Class members, together with costs and reasonable attorneys' fees.

## PARTIES

8. Plaintiff Rose Salaiz is a natural person residing in El Paso, Texas.

9. Defendant SPG is a limited liability company organized and existing under the laws of Florida.

10. Defendant Integrity is a corporation organized and existing under the laws of Delaware.

11. Defendants SPG and Integrity are hereinafter referred to collectively as "Defendants".

## JURISDICTION AND VENUE

12. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

13. This Court has specific personal jurisdiction over Defendants because SPG and Integrity caused the violating calls to be sent to Plaintiff in this District.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the injury occurred in this District.

## COMMON FACTUAL ALLEGATIONS

15. Defendant Integrity is an administrator of vehicle service contracts (hereinafter "VSC") and is the entity that will purportedly pay a covered repair under the contract.

16. Defendant SPG acts as a sales agent for Defendant Integrity's VSCs.

17. Defendant Integrity sent out unsolicited calls through Defendant SPG soliciting Plaintiff and the putative class for Defendant Integrity's VSCs.

18. Defendants SPG and Integrity failed to obtain consent from recipients, nor did they check the Federal Do Not Call Registry.

## PLAINTIFF'S FACTUAL ALLEGATIONS

19. Plaintiff is a natural person who resides in this District.

20. Plaintiff is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

21. Defendant SPG is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

22. Defendant Integrity is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

23. Plaintiff's telephone number ending in -0895 is a residential number and is registered to a cellular telephone service.

24. Plaintiff's telephone number ending in -0895 is used for personal purposes and is not associated with business.

25. Plaintiff successfully registered her telephone number ending in 0895 on the National Do-Not-Call Registry on May 31, 2021, which was more than 31 days prior to receiving the alleged calls in this complaint.

26. Plaintiff never asked the National Do-Not-Call Registry administrator to remove her from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

27. Defendant Integrity is an administrator of VSCs.

28. Defendant Integrity contracted with Defendant SPG to sell Defendant Integrity's VSCs.

29. Upon information and belief, Defendant Integrity gives SPG permission to act as Defendant Integrity's sales agent.

30. As the administrator of its VSCs, Defendant Integrity is the entity that will pay for a covered repair under the contract.

31. Defendants SPG and Integrity operate as a common enterprise.

32. Defendant SPG is owned and operated by Nicole McCullough and Owen McCullough.

33. Defendant Integrity is owned and operated by Owen McCullough.

34. Upon information and belief, Defendant Integrity instructs and gives interim instructions to SPG by providing lead-qualifying instructions and lead volume limits.

35. Upon information and belief, Defendant Integrity determines the times in which the phone calls would be placed by SPG to perspective consumers and which states to target as part of Defendants nationwide telemarketing campaign.

36. Upon information and belief, Defendant Integrity provides SPG with a calling list that involves thousands of residential telephone numbers.

37. Upon information and belief, neither Defendant scrubs their calling list against the National Do Not Call Registry as required by the FTC.

38. Defendants target consumers who have vehicles that have surpassed their factory warranty.

39. Upon information and belief, both Defendants have made substantial profit gains through illegal telemarketing.

40. Plaintiff is a victim of the Defendants' nationwide telemarketing campaign as she was targeted and received unsolicited calls to her telephone ending in -0895.

41. Upon information and belief, Defendants' nationwide telemarketing campaign has reached hundreds if not thousands more residential telephone numbers like Plaintiff's.

42. Plaintiff filed a lawsuit against Defendant Integrity in 2023 for violations of the TCPA and Texas Business and Commerce Code 302.101, *Salaiz v. Integrity Admin Group, Inc.*, No. 3:23-cv-00096-DCG (W.D.TX., Mar. 06, 2023).

43. Plaintiff dismissed the lawsuit against Integrity as both Plaintiff and Integrity came to a resolution.

44. Defendant Integrity knew full well that Plaintiff was not interested in Integrity's VSCs and did not want to receive unsolicited calls to her telephone number ending in -0895.

45. Despite this, Plaintiff received unsolicited calls from Defendant SPG in January 2025 soliciting VSCs on behalf of Defendant Integrity.

46. As a result of the unsolicited calls Plaintiff received in January 2025 from Defendant SPG, Plaintiff received a VSC via email that listed Defendant SPG as the seller and Defendant Integrity as the administrator.

47. On February 18, 2025, Plaintiff sent an email to Defendant Integrity regarding the unsolicited calls she received in ¶ 45 of this complaint.

48. On or about February 26, 2025, Plaintiff and Defendants SPG and Integrity came to an agreement and resolved all matters regarding the unsolicited calls Plaintiff received in ¶ 45 of this complaint.

49. On March 14, 2025, Plaintiff received at least two (2) additional unsolicited calls from Defendant SPG that once again led to Plaintiff being solicited for a VSC on behalf of SGP and Integrity.

50. The additional unsolicited calls described in ¶ 49 of this complaint were sent to Plaintiff's telephone number ending in -0895 as follows:

Call # 1 – from Caller ID (214) 831-3936 at 12:20 PM
Call # 2 – from Caller ID (830) 381-1942 at 1:10 PM

51. As a result of the additional unsolicited calls described in ¶ 49 of this complaint, Plaintiff was solicited for a VSC on behalf of Defendants SPG and Integrity.

52. Plaintiff received the following VSC via email from Defendant SPG.

Gmail - Welcome to StreamLine Protection Group



MARIE SALAIZ <21.msalaiz@gmail.com>

**Welcome to StreamLine Protection Group**
1 message

warranty@protection-policies.com <warranty@protection-policies.com>   Fri, Mar 14, 2025 at 12:36 PM
To: 21.MSALAIZ@gmail.com

# Vehicle Protection You Can Count On

**PAYMENT PLAN AGREEMENT**

Payment Plan Provider provided by:
PayLink Payment Plans, LLC dba PayLink Direct
222 S. Riverside Plaza, Suite 950
Chicago, IL 60606
Ph: 800-839-7940 Fx: 312-261-4888
Email: customerservice@paylinkdirect.com

| CONTRACT NUMBER: | 5082104489 |
|---|---|

| Purchaser | | Seller | |
|---|---|---|---|
| Name: | ROSE SALAIZ | Name: | STREAMLINE PROTECTION GROUP |
| Address: | 319 VALLEY FAIR WAY | Address: | 622 BANYAN TRAIL SUITE 614 |
| City, State, Zip: | EL PASO, TX 79907 | City, State, Zip: | BOCA RATON, FL 33431 |
| Phone: | 9154900895 | Phone: | 888-399-1538 |
| Email: | 21.MSALAIZ@GMAIL.COM | Sales Person: | DANIEL WILLIAMS |

| Vehicle Information | | | | | |
|---|---|---|---|---|---|
| VIN: | 7FARW1H71ME022355 | | | Odometer: | 35009 |
| Year: | 2021 | Make: | HONDA | Model: | CR-V |
| Terms (in months): | 48 | Mileage Term (in miles): | 100000.00 | Contract Effective Date: | 03/14/2025 |

You, the Buyer, may buy the Vehicle Service Contract for the total cash price shown in the Itemization or according to the terms of this Payment Plan Agreement ("Agreement"). By signing this Agreement, you choose to buy the Vehicle Service Contract or other ancillary product from the Seller and pay for it according to this Agreement. The Vehicle Service Contract is issued by
____INTEGRITY____ ("Administrator"). The Vehicle Service Contract number is provided at the top of this Agreement. You and we agree to be bound by the terms of the Agreement. "We," "us" and "our" refer to the Seller shown above, and, upon assignment of this Agreement, to PayLink Payment Plans, LLC dba PayLink Direct ("PayLink Direct"). The Important Disclosures below are part of this Agreement.
Excepted as checked, you have purchased the Vehicle Service Contract primarily for personal, family or household use.
☐ Agricultural  ☐ Business

| | Itemization of Payment Plan | |
|---|---|---|
| a) | Cash Price (before taxes) | $ 3120.01 |
| b) | Taxes on Sale | $ 0.00 |
| c) | Total Cash Price (a + b) | $ 3120.01 |
| d) | Down Payment | 166.77 |
| e) | Total Unpaid Balance (c - d) | $ 2953.24 |

| Purchaser's Payment schedule is as follows: | | | |
|---|---|---|---|
| Number of Payments | Amount of Each Payment | Start of Monthly Payments | Final Payment Date |
| 17 | 173.72 | 04/13/2025 | 09/13/2026 |

7

53. On March 17, 2025, Plaintiff sent an email to Defendants SPG and Integrity regarding the additional unsolicited calls described in ¶ 49 of this complaint.

54. Defendants SPG and Integrity did not deny the additional unsolicited calls or otherwise respond.

55. Upon information and belief, Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

56. Upon information and belief, Defendants do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents either directly or through Defendant's agents.

57. Plaintiff is a Texas resident.

58. The https://direct.sos.state.tx.us/telephone/telephonesearch.asp site ("Texas Registration Database") does not contain neither Defendants SPG nor Integrity's registration.

59. Neither Defendants SPG nor Integrity qualify for an exemption under § 302.053.

60. Plaintiff never provided her prior express written consent to receive any of the alleged calls.

61. Defendants failed to scrub Plaintiff's telephone number -0895 from their calling lists.

62. The calls were nonconsensual encounters that were not made for emergency purposes.

63. The calls were made to Plaintiff for the purpose of encouraging a VSC on behalf of both Defendants.

64. Upon information and belief, the calls were placed while knowingly ignoring the National Do-Not-Call Registry.

65. Upon information and belief, the calls were placed without Defendants training their agents on the use of an internal do-not-call policy.

66. Plaintiff was harmed by the alleged calls.

67. Plaintiff was temporarily deprived of legitimate use of her phone because her privacy was improperly invaded. Moreover, the calls injured Plaintiff by being frustrating, obnoxious, and annoying, constituting a nuisance and disturbing her solitude.

## BASIS FOR LIABILITY

68. Plaintiff realleges paragraphs one through sixty-seven and incorporates them herein as if set forth here in full.

69. Even if Defendant Integrity did not personally make the TCPA violating calls to Plaintiff, they are liable for the TCPA violations under the following theories of vicarious liability: Actual Authority, Apparent Authority, or Ratification.

## ACTUAL AUTHORITY

70. Plaintiff realleges paragraphs one through sixty-nine and incorporates them herein as if set forth here in full.

71. Defendant Integrity authorized and hired SPG to generate prospective customers through illegal telemarketing calls.

72. Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See In re Rules & Regulations Implementing the TCPA, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995) (emphasis added).

73. In their January 4, 2008, ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. Id. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

74. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is

4:23-cv-03055-JMG-MDN Doc # 1 Filed: 04/13/23 Page 7 of 11 - Page ID # 7 8 liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

75. SPG solicited Plaintiff on behalf of Defendant Integrity. Accordingly, SPG had Integrity's actual authority to solicit Plaintiff through illegal telemarketing calls.

**APPARENT AUTHORITY**

76. Plaintiff realleges paragraphs one through seventy-five and incorporates them herein as if set forth here in full.

77. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. 28 CC Rcd at 6592 (¶ 46).

78. Defendant Integrity authorized SPG to generate prospective business for Integrity through illegal telemarketing.

79. Defendant SPG called and solicited Plaintiff for a VSC on behalf of Defendant Integrity. Additionally, SPG sent Plaintiff a VSC contract on behalf of Defendant Integrity. The

integration of their sales efforts was so seamless that it appeared to Plaintiff that Defendant SPG and Defendant Integrity appeared to be acting together as the same company.

80. Plaintiff reasonably believed and relied on the fact that Defendant SPG had received permission to sell, market, and solicit the services of Defendant Integrity.

81. As a direct and proximate result of Defendant SPG's illegal phone calls – which were made on behalf of and with the apparent authority of Defendant Integrity, Plaintiff AND Class members suffered actual damages, including her time to answer the violating calls, depleted battery life, wasted time, invasion of her privacy and the nuisance of receiving the calls.

## RATIFICATION

82. Plaintiff realleges paragraphs one through eighty-one and incorporates them herein as if set forth here in full.

83. Defendant Integrity knowingly and actively accepted business that originated through the illegal calls placed by Defendant SPG.

84. By accepting these contacts and executing contracts with the robocall victims, Defendant SPG "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Defendant Integrity, as described in the Restatement (Third) of Agency.

85. Defendant SPG called Plaintiff to solicit her for a VSC on behalf of Integrity.

86. Defendant Integrity received Plaintiff as a new prospective customer from SPG.

87. Defendant Integrity ratified Defendant SPG's TCPA violations by knowingly accepting the benefits of new customers and revenue despite the fact that the sale was generated through illegal calling.

88. Defendant Integrity further ratified Defendant SPG's TCPA violations by being aware of the violations, being willfully ignorant of the violations or by being aware that such knowledge was lacking.

89. As a direct and proximate result of Defendant SPG's illegal phone calls, Plaintiff and Class members suffered actual damages, including her wasted time to answer the violating

calls, the monies paid to receive the calls, the depleted phone minutes available, invasion of her privacy and the nuisance of receiving the calls.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF DEFENDANT'S ACTIONS

90. Plaintiff realleges paragraphs one through eighty-nine and incorporates them herein as if set forth here in full.

91. The calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

92. The calls harmed Plaintiff by trespassing upon and interfering with her rights and interests in her cellular telephone.

93. The calls harmed Plaintiff by intruding upon her seclusion.

94. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of her cell phone.

## CLASS ALLEGATIONS

95. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and a class defined as follows:

> **TCPA Class**. All persons in the United States who: (1) from the last 4 years to present (2) Defendants called (3) whose telephone numbers were registered on the Federal Do Not Call Registry for more than 30 days at the time.
>
> **Texas Subclass**. All persons in Texas who: (1) from the last 4 years to present (2) Defendants called (3) whose telephone numbers were registered on the Federal Do Not Call Registry for more than 30 days at the time.

96. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants', Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their

parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

97. **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but individual joinder is impracticable. On information and belief, Defendants sent unsolicited calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendant's records.

98. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of the Defendants uniform wrongful conduct and unsolicited calls.

99. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

100. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. The Defendants practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on the Defendants conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

101. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a. Whether the unsolicited calls were caused by the Defendants;

   b. Whether the unsolicited calls promoted the Defendants' products or services;

   c. Whether the Defendants checked the phone numbers to be called against the Federal Do Not Call Registry;

   d. Whether the Defendants obtained written express consent prior to sending the unsolicited calls;

   e. Whether members of the Class are entitled to treble damages based on the knowingness and/or willfulness of the Defendants' conduct.

102. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from the Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

**First Cause of Action:**
**Violation of 47 U.S.C. § 227(c)**
**Do Not Call Provision**
**(On behalf of Plaintiff and the TCPA Class)**
**(Against All Defendants)**

103.  Plaintiff realleges paragraphs one through one hundred and two and incorporates them herein as if set forth here in full.

104.  The telephone numbers of Plaintiff and the Class are registered on the Do Not Call Registry.

105.  Defendants placed unsolicited phone calls to Plaintiff and the Class members' DNC registered telephones without having their prior written consent to do so.

106.  Defendants' actions constitute violations of 47 U.S.C. § 227(c) of the TCPA, by soliciting telephone numbers listed on the Federal Government's National Do Not Call Registry 47 C.F.R. § 64.1200(c)(2).

107.  Defendants' solicitating phone calls were made for the commercial purpose of soliciting Defendants' VSCs.

108.  As a result of its unlawful conduct, Defendants repeatedly invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages.

109.  Plaintiff is entitled to an award of at least $500 in damages for each such violation (47 U.S.C. § 227(c)(5)(B)) or $1,500 if the violation is knowing or willful. 47 U.S.C. § 227(c)(5).

110.  Plaintiff also seeks a permanent injunction prohibiting Defendants from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

//
//
//
//

**Second Cause of Action:**
**Violations of The Texas Business and Commerce Code § 302.101**
**Failure to obtain a Telephone Solicitation Registration Certificate**
**(On behalf of Plaintiff and the Texas Subclass)**
**(Against All Defendants)**

111.  Plaintiff realleges paragraphs one through one hundred and eleven and incorporates them herein as if set forth here in full.

112.  Defendants sent illegal solicitation sales calls to Plaintiff and the putative class without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

113.  Upon information and belief, the actions of the Defendants also violated Texas Business and Commerce Code § 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

114.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such.

115.  Upon information and belief, Plaintiff sent a notice of violation and request for remedy under Texas Business and Commercial Code § 17.505(a).

116.  As a result of the Defendants' violations of the Texas Business and Commerce Code § 302.101, Plaintiff may and does seek damages of up to $5,000.00 for each violation. Texas Business and Commerce Code § 302.302(a).

117.  As a result of the Defendants' violations of §302.101, Plaintiff seeks all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ROSE SALAIZ, individually and on behalf of the Class, prays for the following relief:

A.  An order certifying the Class as defined above, appointing Plaintiff as the Class representative and appointing her counsel as Class Counsel;

B.  An order declaring that Defendants' actions, as set out above, violate 227(c) of the TCPA;

C. An order declaring that Defendants' actions, as set out above, violate 302.101 of the Texas Business and Commerce code;

D. An order declaring that the Defendants' actions, as set out above, violate the TCPA willfully and knowingly;

E. An award of $1,500 per call in statutory damages arising from the TCPA §227(c) for each intentional violation;

F. An order declaring that the Defendant's actions, as set out above, violate the Texas Business and Commerce code willfully and knowingly;

G. An award of $5,000 in statutory damages arising from the Texas Business and Commerce code 302.101 for each intentional violation;

H. An injunction requiring the Defendants to cease sending all unlawful calls;

I. An award of reasonable attorneys' fees and costs; and

J. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: April 15, 2025,            Respectfully submitted,

By: /s/ Mark L. Javitch
Mark L. Javitch (California SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave. Ste. 200
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com

*Attorneys for Plaintiff and the Putative Class*